1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9    AMBER SLOAN,                         Case No. 3:12-cv-00336-MMD-WGC

10                        Plaintiff,                    ORDER

11         v.
                                          (Def.'s Motion for Summary Judgment –
12   EUGENE BURGER CORPORATION, a                     dkt. no.  24)
     Foreign Corporation,
13
                          Defendant.
14

15   **I.    SUMMARY**

16         Before the Court is Defendant Eugene Burger Corporation's ("Defendant") Motion

17   for Summary Judgment.  (Dkt. no. 24.)  The Court has also considered Plaintiff Amber

18   Sloan's ("Plaintiff") Response (dkt. no. 25) and Defendant's Reply (dkt. no. 26).  For the

19   reasons discussed below, the Motion is granted in part and denied in part.

20   **II.   BACKGROUND**

21         This case is a sexual harassment and retaliation suit arising from the alleged

22   actions of Defendant Eugene Burger Corporation's employee and Defendant's

23   subsequent termination of Plaintiff Amber Sloan after Plaintiff's formal complaint.

24   Defendant manages the Arlington Towers high-rise residential facility in downtown Reno,

25   Nevada.  Defendant hired Plaintiff on or about January 15, 2008, to work as a janitor at

26   Arlington Towers.  (Dkt. no. 24-1, p. 19.)

27         On November 19, 2008, Plaintiff filed a report with the police and an official

28   complaint with Defendant alleging she had been sexually harassed by her immediate

supervisor, Danny Hiatt.  (Dkt. no. 25-3, pp. 75-76.)  Plaintiff testified in her deposition that Mr. Hiatt made inappropriate sexual comments about residents in Plaintiff's presence, subjected Plaintiff to descriptions of his sexual encounters, made Plaintiff accompany him and other employees to a topless bar during the lunch hour, and while there, encouraged Plaintiff to get a lap dance. (*Id.* at pp. 34-48, 82-87.)  Plaintiff also testified that Mr. Hiatt engaged in various behaviors to intimidate Plaintiff so Plaintiff would not report his behavior. (*Id.* at pp. 48-81.) This included placing Plaintiff in a choke hold, pulling Plaintiff's hair, and threatening to accuse Plaintiff of various sexual assaults if she reported his behavior. (*Id.*)

After filing the complaint with Defendant, Plaintiff was reassigned to work under a different supervisor on different floors of the building. (*Id.* at 105-06). William Gillis, Defendant's general counsel, also interviewed Plaintiff and Mr. Hiatt about the allegations. (Dkt. no. 25-5, p. 31; dkt. no. 24-2, p. 41.) Mr. Hiatt denied the allegations of sexual harassment, but admitted that he had acted inappropriately with his physical conduct. (Dkt. no. 24-2, p. 41.)  Mr. Gillis concluded that Mr. Hiatt had engaged in inappropriate "horseplay." (Dkt. no. 24-2.) Defendant gave Mr. Hiatt a letter of reprimand and required him to attend supervisory sexual harassment training. (*Id.*)  After the reassignment, Plaintiff did not experience further sexual harassment from Mr. Hiatt or any other of Defendant's employees. (Dkt. no. 24-1, p. 111.)

A couple of days after filing the complaint, Plaintiff was also interviewed by B.J. Brown, another of Defendant's employees, and two other janitorial department supervisors.  Ms. Brown asked Plaintiff about her allegations, and then the conversation turned to Plaintiff's job performance. (Dkt. no 25-4, pp. 112-13.)  At this point, Plaintiff stood to leave and Ms. Brown said, "Sit down or you're fired." (*Id.* at 115.)  Ms. Brown also told Plaintiff that one possible solution to her sexual harassment allegations was to place her on suspension. (*Id.* at 117.)  The interview concluded with Ms. Brown issuing a formal, written reprimand to Plaintiff for poor job performance. (*Id.*)

///

1    The facts regarding Plaintiff's job performance are disputed. Plaintiff's new

2  supervisor, Rajean McCafferty, stated in her declaration that she found Plaintiff's job

3  performance to be lacking and received numerous complaints from tenants in the

4  building about the areas Plaintiff was assigned to clean. (Dkt. no. 24-3.) Ms. McCafferty

5  also found Plaintiff to be insubordinate, defying her orders, ignoring instructions, and

6  lying about the completion of projects. (*Id.*)  Contrarily, Plaintiff testified Ms. McCafferty

7  made Plaintiff repeat tasks that had been completed, re-clean that which Plaintiff had

8  just cleaned, and prevented Plaintiff from cleaning certain areas to generate tenant

9  complaints. (Dkt. no. 25-4, pp. 108-09, 132-35.) Ms. McCafferty never took any

10  disciplinary action against Plaintiff (*id.* at 107), but terminated Plaintiff for poor

11  performance on January 13, 2009. (Dkt. no. 24-3.)

12    Plaintiff filed this lawsuit on June 6, 2012.  Her Complaint alleges claims for

13  sexual harassment under Title VII and NRS 613.330, retaliation under Title VII and NRS

14  613.330, and negligent hiring, supervision and retention. Defendant now moves for

15  summary judgment.

16  **III.    DISCUSSION**

17      **A.    Legal Standard**

18    The purpose of summary judgment is to avoid unnecessary trials when there is no

19  dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

20  F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings,

21  depositions, answers to interrogatories, and admissions on file, together with the

22  affidavits, if any, show there is no genuine issue as to any material fact and that the

23  movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S.

24  317, 330 (1986) (*citing* Fed. R. Civ. P. 56(c)).  An issue is "genuine" if there is a sufficient

25  evidentiary basis on which a reasonable fact-finder could find for the nonmoving party

26  and a dispute is "material" if it could affect the outcome of the suit under the governing

27  law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable

28  minds could differ on the material facts at issue, however, summary judgment is not

appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, the Court may only consider evidence which might be admissible at trial in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

**B.    Analysis**

Defendant has not met its burden on summary judgment as to the sexual harassment and retaliation claims, but has shown that it is entitled to judgment as a matter of law on Plaintiff's negligent hiring, supervision, and retention claim. Defendant is vicariously liable for Mr. Hiatt's conduct because he was Plaintiff's supervisor and Defendant has not shown that Mr. Hiatt's actions did not constitute sexual harassment to obtain summary judgment on Plaintiff's sexual harassment claims. As to Plaintiff's retaliation claims, questions of material fact regarding whether the disciplinary actions

4

and ultimate termination of Plaintiff's employment were motivated by Plaintiff's reporting preclude summary judgment. However, as to Plaintiff's negligent hiring, supervision, and retention claim, Plaintiff cannot prevail based on the factual allegations underlying the claim and summary judgment is appropriate.

### 1.    Sexual Harassment

Defendant has not met its burden for summary judgment on Plaintiff's sexual harassment claims. Rather than contest Plaintiff's allegations of Mr. Hiatt's sexual harassment, Defendant argues that it is entitled to summary judgment because when it became informed of Plaintiff's allegations, it took immediate action to investigate the matter and remove Plaintiff from the situation. However, in so arguing, Defendant ignores the fact that Plaintiff alleges that Mr. Hiatt was her immediate supervisor, which entails a vicarious liability standard. Under the correct standard, Defendant has failed to show its actions eliminated its vicarious liability for Mr. Hiatt's conduct, and summary judgment must be denied.

Sexual harassment is a form of sex discrimination under Title VII.[1] *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001). "Where harassment by a co-worker is alleged, the employer can be held liable only where 'its own negligence is a cause of the harassment." *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). In such scenarios, the plaintiff must show that the employer failed to take action or took inadequate action after learning of the co-worker's sexually harassing conduct. *Id.* However, where harassment by a supervisor is alleged, an employer is subject to vicarious liability for the "actionable hostile environment created by the supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Nonetheless, in these situations, the employer

---

[1]Due to similarities between the two laws, Nevada courts have looked to federal courts' construction of Title VII in interpreting NRS 613.330. *See, e.g., Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). Thus, the Court analyzes Plaintiff's state and federal claims arising under anti-discrimination statutes together under the federal standards.

1   has an affirmative defense that eliminates its vicarious liability where it can show (1) "no

2   tangible employment action [was] taken," against the plaintiff employee, (2) "the

3   employer exercised reasonable care to prevent and correct promptly any sexually

4   harassing behavior," and (3) "the plaintiff employee unreasonably failed to take

5   advantage of any preventative or corrective opportunities." *Id.*

6          The general label of "supervisor" held by an employee is insufficient to impose

7   vicarious liability on an employer for the employee's harassment as the term is subject to

8   varied colloquial and legal interpretations. *Vance v. Ball State University*, 133 S. Ct.

9   2434, 2444-45 (2013). Rather, "an employee is a 'supervisor' for purposes of vicarious

10  liability under Title VII if he or she is empowered by the employer to take tangible

11  employment actions against the victim." *Id.* at 2439. Such actions include "hiring, firing,

12  failing to promote, reassignment with significantly different responsibilities, or a decision

13  causing a significant change in benefits." *Id.* at 2443 (*citing Ellerth*, 524 U.S. at 761).

14         Although Plaintiff labels Mr. Hiatt as a supervisor, it is unclear what authority he

15  held over Plaintiff.[2]  Nonetheless, Defendant has not argued or produced any evidence

16  tending to show that Mr. Hiatt lacked authority to affect tangible employment actions

17  against Plaintiff and has generally acquiesced to Plaintiff's characterization of Mr. Hiatt.

18  (*See* dkt. nos. 24, 26.) Thus, questions of material fact remain about Mr. Hiatt's

19  supervisory status.  Viewing the facts in the light most favorable to Plaintiff, the Court

20  must conclude that Mr. Hiatt was a supervisor for the purposes of imposing vicarious

21  liability on Defendant under Title VII.

22  ///

23

24  ——————————————————

25  [2]The records generally support that Mr. Hiatt was Plaintiff's supervisor for the
    purposes of vicarious liability under Title VII.  Plaintiff's testimony suggests that Mr. Hiatt
26  hired her (dkt. no. 25-2, pp. 17-18) and had authority to at least reprimand her (dkt. no.
    25).  Moreover, the declaration of Rajean McCafferty, Plaintiff's subsequent supervisor
27  presumably on the same level as Mr. Hiatt, indicates that Ms. McCafferty terminated, or
    at least recommended the termination of, Plaintiff's employment. (Dkt. no. 24-3.)
28  Nonetheless, no party has produced direct evidence relating to Mr. Hiatt's level of
    authority.

1   Under the vicarious liability framework for supervisor-harassers, Defendant has
2   not shown it is entitled to judgment as a matter of law.  First, under the proper standard,
3   Defendant's remedial actions are irrelevant as Defendant is liable for the harassing
4   behavior of Mr. Hiatt, not just for its own negligence.  Second, Defendant has not shown
5   the elements of the affirmative defense to eliminate its vicarious liability. As discussed
6   below, whether Plaintiff was terminated in response to her reporting sexual harassment
7   cannot be determined.  For this reason, Defendant cannot show that it meets the first
8   prong of the affirmative defense because a tangible employment action may have been
9   taken against Plaintiff.[3]

10   Consequently, as Defendant cannot eliminate its vicarious liability for Mr. Hiatt's
11   actions, and as Defendant has not established that Mr. Hiatt did not sexually harass
12   Plaintiff, it is not entitled to judgment as a matter of law.

13   **2.     Retaliation**

14   Defendant fails to meet its initial burden in showing that there are no genuine
15   issues of material fact entitling it to judgment as a matter of law on Plaintiff's retaliation
16   claims. Defendant argues that Plaintiff's termination was in response to her poor
17   performance and was unrelated to her report of sexual harassment. Defendant thus
18   asserts that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's
19   employment.  Contrarily, Plaintiff asserts that the poor performance was manufactured
20   by Defendant and pretextual to a termination for her reporting sexual harassment.
21   Because it is unclear when Plaintiff was first reprimanded for poor performance and
22   because a determination about Plaintiff's job performance must be resolved by a
23   credibility determination, summary judgment is inappropriate.

24   To establish a prima facie case of retaliation, Plaintiff must show that "(1) she
25   engaged in a protected activity, (2) she suffered an adverse employment action, and (3)

26
27   [3]As Defendant fails to meet the first prong, the Court does not reach the questions
     of whether Defendant had a mechanism in place for preventing and promptly correctly
28   sexual harassment or whether Plaintiff failed to avail herself of that mechanism.

there was a causal link between her activity and the employment decision." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196-97 (9th Cir. 2003). "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (*quoting Yartzoff v. Thomas*, 809 F.2d 1371, 1371 (9th Cir. 1987)).

If a plaintiff establishes a prima facie case, "the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973)). If the employer articulates such a reason, the plaintiff "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003).

Plaintiff has established a prima facie case. There is no dispute that Plaintiff's reporting sexual harassment was a protected activity or that the disciplinary actions and her ultimate termination were adverse employment actions. Further, despite Defendant's argument to the contrary, taking the facts in the light most favorable to Plaintiff, the proximity in time between Plaintiff's reporting of the interview with Ms. Brown and her ultimate termination is sufficient to create an inference of causation. Nonetheless, Defendant has also articulated a legitimate, nondiscriminatory reason for her termination — Plaintiff's poor performance. Thus, the remaining issue is whether Plaintiff has established evidence of a pretext to terminate her for her sexual harassment complaint.

The Court finds that Plaintiff has offer evidence of pretext. First, there is a factual dispute about when the complaints about Plaintiff's poor performance began. Defendant maintains that tenants had complained about Plaintiff and that Plaintiff had been officially reprimanded for poor performance *before* she reported sexual harassment. However, Defendant has not produced admissible evidence to support this proposition. Defendant relies on the deposition testimony of William Gillis to establish Plaintiff's history of poor

performance, but Mr. Gillis only testifies as to what he had been told by others with respect to Plaintiff's performance. (Dkt. no. 24-2, pp. 14-15.) Mr. Gillis testified that he did not have personal knowledge of Plaintiff's work performance issues until after Plaintiff's sexual harassment complaint. (*Id.* at 31.) As such, his testimony is inadmissible hearsay.[4] In her response, Plaintiff admits to receiving one minor verbal warning from Mr. Hiatt prior to her complaint, but testified that the warning actually complimented her as a good worker while encouraging her to speak less with tenants.[5] (Dkt. no. 25.) Based on the admissible evidence before the Court, and viewing the facts in the light most favorable to Plaintiff, the Court must consider that the concerns about Plaintiff's work performance arose only after her complaint of sexual harassment. This fact supports Plaintiff's contention that the work performance was pretextual to a discriminatory termination.[6]

Second, questions remain about the actual quality of Plaintiff's work, after her complaint and reassignment. Defendant relies on the declaration of Rajean McCafferty, Plaintiff's second supervisor, to establish that Plaintiff's work was unsatisfactory, but this is disputed. Plaintiff testified that Ms. McCafferty would unduly scrutinize Plaintiff's work, make Plaintiff repeat tasks, and purposefully create situations where tenants would complain about Plaintiff's work. Weighing the credibility of these competing testimonies and making a subjective determination about whether work was satisfactory is within the realm of a jury.

///

---

[4]The Court also notes that many of the specific pages of Mr. Gillis' deposition testimony referenced in the Motion are omitted from the attached exhibit. As these parts of Mr. Gillis' testimony are not presently before the Court, they cannot support Defendant's propositions.

[5]Plaintiff cites to "exhibit 3 to her deposition" for support of this contention, however, no exhibit 3 was included with Plaintiff's attached deposition transcript.

[6]Moreover, even if there had been complaints or even discipline before Plaintiff's complaint, the timing of the interview with Ms. Brown, only two days after the complaint, is suspect.

1    Genuine issues of material fact exist as to whether Plaintiff's work performance
2  was substandard and whether it became unsatisfactory only after her complaint.  These
3  disputed issues of fact preclude summary judgment.

4    **3.    Negligent Hiring, Supervising and Retention**

5    Plaintiff alleges that Defendant, in hiring Mr. Hiatt, failed to conduct an adequate
6  background search that would have revealed Mr. Hiatt's criminal convictions of burglary
7  and assault.  Under Nevada law, employers have a general duty "to conduct a
8  reasonable background check on a potential employee to ensure that the employee is fit
9  for the position." *Burnett v. C.B.A. Sec. Serv., Inc.*, 820 P.2d 750, 752 (Nev. 1991). "An
10  employer breaches this duty when it hires an employee even though the employer knew,
11  or should have known, of that employee's dangerous propensities." *Hall v. SSF, Inc.*,
12  930 P.2d 94, 98 (Nev. 1996).

13    However, Plaintiff cannot show how Defendant's breach of its duty to perform a
14  reasonable background check caused her harm of being sexually harassed.  Mr. Hiatt's
15  alleged criminal convictions are not causally related to the alleged incidents of sexual
16  harassment.  Since Plaintiff cannot establish the causation element to support her claim
17  for negligent hiring, supervision, and retention, summary judgment must be granted.

18  **IV.    CONCLUSION**

19    It is therefore ordered that Defendant Eugene Burger Corporation's Motion for
20  Summary Judgment is granted as to Plaintiff's fifth claim for negligent hiring, supervision,
21  and retention.  However, summary judgment is denied as to Plaintiff's first, second, third
22  and fourth claims for sexual harassment and retaliation under Title VII and NRS 613.330.

23
24    DATED THIS 26th day of February 2014.

25                                                   MIRANDA M. DU
26                                                   UNITED STATES DISTRICT JUDGE
27
28